**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-11098

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

TIMOTHY ECKERSON, also known as Baby, also known as Tommy
Lee Irons; TYRON DOUGLAS HENTON; JOHNNY WILLIAM IRONS, also known
as Cube; WILLIAM ERIC RICHARDSON, also known as Big E,

Defendants-Appellants.

_____

Appeal from the United States District Court
For the Northern District of Texas

(4:95-CR-36-Y)

_____

January 21, 1997

Before JOLLY, JONES and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:[*]

Tyrone Henton ("Henton"), Johnny William Irons ("Irons"), and

Timothy Wayne Eckerson ("Eckerson") appeal their convictions and

_____

[*] Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

1

sentences related to a drug conspiracy. Finding no reversible error, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Henton, Irons and Eckerson were among seventeen individuals named in a thirty-two count indictment. From at least January 1991 through March 8, 1995, the indictment alleged that the appellants were part of a large network of individuals that distributed crack cocaine, primarily in the Fort Worth, Texas area. Eckerson is Irons' younger brother and the two lived together and were both employed at what were described as tedious jobs at Bunge Foods, a rendering plant.

Henton, Irons and Eckerson were charged in Count 1 with conspiracy to distribute fifty grams or more of cocaine base. Additionally, Henton was charged in Count 7 with distribution of 12.81 grams of cocaine base; Irons and Eckerson were charged in Count 13 with distributing 62.12 grams of cocaine base and in Count 26 with possession with intent to distribute 35.8 grams of cocaine base.

The three were tried before a jury in June 1995.[1] The jury found Henton guilty of the conspiracy count and the distribution count. Likewise, Eckerson was found guilty of the conspiracy

---

[1]In addition to the three appellants, the defendants at trial included Dwayne Mitchell, who entered a guilty plea during the proceeding, and William Eric Richardson, whose *pro se* appeal in this matter was dismissed for want of prosecution on August 12, 1996.

count, the distribution count and the possession with intent to distribute count. Irons was found guilty of the conspiracy count and not guilty of the counts of distribution and possession with intent to distribute.

Henton was sentenced to 121 months imprisonment on both counts, to run concurrently, a five-year term of supervised release and a special assessment of $100. Eckerson was sentenced to 121 months imprisonment on all three counts, to run concurrently, a five-year term of supervised release, and was ordered to pay a special assessment of $150. Irons was sentenced to 324 months on the conspiracy count, a five-year term of supervised release and was ordered to pay a special assessment of $50. All three timely filed notices of appeal with this court.

## II. DISCUSSION

### a. Sufficiency of evidence

All three appellants argue that their convictions should be overturned because the evidence was insufficient. We must determine whether, viewing the evidence and the inferences that can be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the challenged offenses beyond a reasonable doubt. *United States v. Sneed*, 63 F.3d 381, 385 (5th Cir. 1995), *cert. denied*, ___ U.S. ___, 116 S. Ct. 712 (1996).

The appellants each attack their conspiracy convictions for

3

insufficiency of evidence.  In order to prove a drug conspiracy, the government must show, beyond a reasonable doubt that (1) there existed an agreement to violate narcotics laws; (2) the defendant knew of the conspiracy and intentionally joined in it; and (3) the defendant's participation in the conspiracy was voluntary.  *United States v. Castillo*, 77 F.3d 1480, 1492 (5th Cir.), *cert. denied*, ___ U.S. ___, 117 S. Ct. 180 (1996).  A conspiracy conviction may be upheld even if the alleged conspirator did not have knowledge of the exact details of the conspiracy or the precise identities of all co-conspirators, so long as he knowingly participated in the overall conspiracy.  *United States v. Alix*, 86 F.3d 429, 436 (5th Cir. 1996).  "[A] defendant need only have had a minor role in the conspiracy, once it is shown that he voluntarily agreed to participate."  *Castillo*, 77 F.3d at 1493.

Irons contends that the only evidence upon which the jury could have premised its guilty verdict as it related to him was the testimony of an accomplice, Gary Willie, who had entered a guilty plea.  It is clearly established that a conviction may rest solely on the "uncorroborated testimony of an accomplice if the testimony is not incredible or otherwise insubstantial on its face."  *United States v. Moreno*, 649 F.2d 309, 312 (5th Cir. 1981).  Willie's testimony was not incredible or otherwise insubstantial on its face and was sufficient to bring Irons within the scope of the conspiracy.  There is no basis for reversing Irons' conviction on

4

the conspiracy charge.

Eckerson argues that the evidence presented failed to demonstrate that he knowingly joined in any agreement with the other alleged co-conspirators. However, there was clear evidence that Eckerson actually completed a transaction with an undercover officer while Irons was present, arguably providing counter-surveillance. Additionally, Eckerson worked with many of the co-conspirators and lived with Irons, providing evidence from which it might be inferred that Eckerson was aware of the conspiracy and knowingly joined in it to advance its purpose. Although a conspiracy conviction may not be based solely on familial relationships or mere knowing presence, inferences may be drawn from the evidence of the relationships in this case that, in combination with other circumstantial evidence, adequately supports Eckerson's conviction. *See United States v. Broussard*, 80 F.3d 1025, 1031 (5th Cir.), *cert. denied*, ___ U.S. ___, 117 S. Ct. 264 (1996).

Henton alleges that the government charged a single conspiracy in the indictment then attempted to convict him based on multiple conspiracies, but introduced insufficient evidence of the single conspiracy. We disagree. When a single conspiracy is alleged in the indictment but multiple conspiracies are demonstrated at trial and the defendant's participation in at least one of the conspiracies is proved, there is no basis for reversal. *United*

5

*States v. Richerson,* 833 F.2d 1147, 1155 (5th Cir. 1987). There is sufficient evidence in this record to allow the jury to conclude that Henton knowingly and voluntarily joined a conspiracy with at least some of the alleged co-conspirators. We therefore affirm Henton's conspiracy conviction.

Henton next argues that the evidence was insufficient to support his conviction for possession with intent to distribute cocaine. However, Henton was convicted of distribution of cocaine, rather than for possession. Testimony of an informant concerning Henton's involvement in a drug transaction was clearly sufficient to sustain the distribution conviction. This ground of error has no merit.

Eckerson also appeals his conviction for possession with intent to distribute cocaine.[2] A conviction for possession with intent to distribute requires the government to show that the defendant knowingly possessed a controlled substance with the intent to distribute the substance. *United States v. Anchondo-Sadoval*, 910 F.2d 1234, 1236 (5th Cir. 1990). Possession may be shown by circumstantial evidence. *United States v. Hernandez-Palacios*, 838 F.2d 1346, 1349 (5th Cir. 1988). Knowing possession may be inferred from control over the concealed contraband in connection with other evidence that is suspicious in nature or

---

[2]Eckerson does not appeal his conviction for distribution of cocaine on the basis of the sufficiency of the evidence.

demonstrates guilty knowledge. *Anchondo-Sadoval*, 910 F.2d at 1236. Here, Eckerson's fingerprints were found on the false bottom shaving cream can seized from the apartment he shared with Irons. The can contained the cocaine that formed the basis of the possession with intent to distribute count, and the presence of the fingerprint, in connection with the previous drug transaction and other evidence, is sufficient to support the conviction.

## b. Irons' motion for severance

Irons asserts that he was denied a fair trial by virtue of being joined in the indictment and at trial with other, allegedly more culpable, co-defendants. He contends that the refusal of the district court to sever him from the other defendants was an abuse of discretion. *United States v. Box*, 50 F.3d 345, 357 (5th Cir.), *cert. denied*, ___ U.S. ___, 116 S. Ct. 309 (1995)(Decision whether to grant a defendant a severance under Federal Rule of Criminal Procedure 14 is reviewed for abuse of discretion.) Generally, parties joined in an indictment alleging conspiracy should be tried together. *United States v. McKinney*, 53 F.3d 664, 674 (5th Cir.), *cert. denied*, ___ U.S. ___, 116 S. Ct. 261 (1995). An appellant must show more than the mere fact that a severance would have provided him a better chance of acquittal. *Box*, 50 F.3d at 357. Severance of properly joined defendants is proper only if there exists a serious risk that a single trial would interfere with a specific trial right of a defendant or would interfere with the

jury's ability to reach a reliable verdict.  *Zafiro v. United States*, 506 U.S. 534, 113 S. Ct. 933, 938, 122 L. Ed. 2d 317 (1993).  Additionally, proper jury instructions, requiring the jury to consider each defendant and the relevant proof of guilt individually are sufficient to cure the risk of prejudice.  *Id.* at 939.

Irons argues that he was less culpable than the other defendants and was harmed by "spill-over" evidence.  However, the trial judge instructed the jury to consider each charge and each defendant separately.  The fact that the jury acquitted Irons of the two substantive charges further supports the conclusion that he was not prejudiced by the joint trial.  Irons has not made the requisite showing of abuse of discretion, particularly in light of the district court's instructions to the jury.

## c. The Government's failure to disclose documents

Both Eckerson and Henton contend that their convictions should be reversed because of the government's failure to disclose material exculpatory evidence in accordance with *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963).  The government must disclose material evidence favorable to the defense or beneficial to the defense for purposes of impeaching a witness testifying against the defense.  *United States v. Holley*, 23 F.3d 902, 914 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 635 (1994).  Failure to disclose such material evidence requires

8

reversal. *Id.* Evidence is material only if there is a reasonable probability that, had the defendant known of the evidence, the outcome of the trial would have differed. *Id.*

During trial, Payton, a paid informant for the government, testified regarding various transactions with the defendants. After direct examination of Payton was concluded, the government revealed that Payton had signed agreements with the Fort Worth Police Department and the Alcohol Tobacco and Firearms agency that constituted the terms and conditions of his work as an informant.[3] The district court took a break to allow the defendants to review the documents and prepare cross-examination on them. Eckerson and Henton claim that the failure of the government to reveal the existence of these documents earlier constitutes a violation of *Brady* and requires reversal. They argue that the agreements could have been utilized to impeach the credibility of Payton. Additionally, they assert that since Payton breached the terms of the agreements by engaging in unauthorized illegal drug transactions the importance of the documents increased.

The prosecutor was initially unaware of the agreements, and disclosed them when they came to her attention, at the beginning of

---

[3] Eckerson also objects to the failure of the government to disclose an internal FBI document that demonstrated that the federal agents were not in compliance with their own regulations when they used Payton as an informant. The district court concluded that the FBI document was not relevant to the questions before the jury and was not material under *Brady*. We agree.

9

defendants' cross-examination of Payton. During direct examination, the government elicited the information that Payton was paid for his informant work and that he had engaged in unauthorized drug transactions. The defendants were then able to fully cross-examine Payton concerning the agreements. Neither defendant asked for a continuance in order to review the agreements or prepare for the remainder of the trial.

We are not convinced that *Brady* was violated in this case. However, even assuming that it was, the failure to timely disclose the documents is not an omission that calls into question the reliability of the outcome of the trial. *See Holly*, 23 F.3d at 914. We therefore find no merit in appellants' *Brady* issue.

However, we are concerned, as a matter of policy, that the prosecutor's lack of communication with law enforcement personnel resulted in the government's failure to timely comply with the district court's discovery order. The price of such violations may, within the discretion of the district court, include mistrial or exclusion of the evidence. In this case, because the jury's truth-finding function was not impaired, we find no abuse of discretion in the district court's handling of the matter.

**d. Evidence of extrinsic acts**

The district court allowed a government informant to testify regarding three drug transactions with Henton in addition to the transaction that was included as Count 7 in the indictment. Henton

10

contends that this was error because the testimony amounted to testimony of extrinsic acts and, therefore required advance notice under Federal Rule of Criminal Procedure 404(b). We review the district court's decision to admit testimony for abuse of discretion. *United States v. Hooker*, 997 F.2d 67, 76 (5th Cir. 1993). In addition to the distribution count, Henton was on trial for conspiracy. The evidence of the other drug transactions goes to the proof of the conspiracy. As this court has held,

> [e]vidence that is "inextricably intertwined" with the evidence used to prove a crime charged is not "extrinsic" evidence under Rule 404(b). *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989). Such evidence is considered "intrinsic" and is admissible "so that the jury may evaluate all the circumstances under which the defendant acted." *Id.* *See also United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990) ("'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were necessary preliminaries to the crime charged.")

*United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992), *cert. denied*, 507 U.S. 911 (1993).

**e. Scope of re-direct examination**

Irons asserts that the district court erred in overruling his objection to questions posed to Gary Willie on re-direct examination. In matters relating to the scope of cross-examination, the discretion of the trial judge in far-reaching. *United States v. Carrillo*, 20 F.3d 617, 621 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 261 (1994). On cross-examination,

11

Irons asked Willie whether a particular individual, Hawkins, was involved in selling cocaine. On redirect, the attorney for the United States asked the witness a series of questions regarding whether that same individual was involved in storing cocaine. The allowance of this question, arguably related to the question asked on cross-examination, was not an abuse of discretion.

**f. Motion for mistrial after guilty plea**

During the course of the trial, co-defendant Mitchell entered a guilty plea. Irons contends that the district court erred when it overruled his objection to the entry of the plea during trial and when it subsequently denied his motion for a mistrial. Following the plea, the district court instructed the jury as follows:

> ladies and gentlemen, you may notice that Dwayne Mitchell is no longer present in the courtroom. There are any number of explanations for that that could be given, but it's not important to you to know why. So I'm instructing you that you should put that out of your mind and not consider that for any purpose, nor should you speculate as to why he might not be continuing in this case. Having said that, I think that's the last thing that needs to be said or thought about it, and we will move on with the case.

Irons asserts that Mitchell's absence from the courtroom allowed the jury to speculate that co-defendant Mitchell was persuaded that he would be found guilty and he therefore availed himself of such benefit as he might by entering a guilty plea.

Denial of a motion for mistrial is reviewed for abuse of discretion. *United States v. Merida*, 765 F.2d 1205, 1220-21 (5th

12

Cir. 1985). In *United States v. Ramirez*, 963 F.2d 693, 700-01 (5th Cir.), *cert. denied*, 506 U.S. 944 (1992), this court held that a trial judge did not abuse his discretion in refusing to grant a mistrial after six of nine defendants entered guilty pleas during trial and were thereafter absent from the courtroom. The court noted that the trial judge appropriately instructed the jury not to consider the absence of the other defendants and concluded that the instruction was "sufficient to cure any prejudicial impact" resulting form the absence of the pleading defendants. *Id.* Following *Ramirez*, we find that the district court's denial of the motion for mistrial was not an abuse of discretion.

**g. Sentencing guidelines for cocaine base**

Irons argues that the sentencing guidelines violate his rights under the Fifth and Eighth Amendments. This argument is foreclosed by settled circuit precedent. *See, e.g., United States v. Wilson,* 77 F.3d 105, 112 (5th Cir. 1996).

Eckerson contends that the refusal of the district court to depart downward to the sentencing guidelines for powder cocaine on the basis of "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission" was error. Eckerson asserts that the Sentencing Commission's study that concluded that the ratio reflected by the guidelines is not supported by the difference in harms caused by the drugs is a factor not taken into account by the

13

Commission under the guidelines. Subsequent to the Eckerson's sentencing, this court considered this question and rejected it. We held that a district court may not downwardly depart based on the sentencing disparity between crack cocaine and powder cocaine because that disparity was specifically considered by Congress and it would be inappropriate for a district court to second guess the judgment of Congress expressed in sentencing legislation. *United States v. Fonts*, 95 F.3d 372, 374 (5th Cir. 1996). We therefore find no error in the district court's application of the crack cocaine guidelines to Irons and Eckerson.

## h. Three-level increase in offense level

Irons argues that the district court erroneously increased his offense by three levels. The findings of the district court regarding a defendant's role in the offense are reviewed on appeal for clear error. *United States v. Bethley*, 973 F.2d 396, 401 (5th Cir. 1992), *cert. denied*, 507 U.S. 935 (1993). The district court adopted the Presentence Report's ("PSR") recommendation that the offense level be increased by three levels because Irons acted as a manager or supervisor of the conspiracy. Although Irons objected to the PSR, he offered no testimony to rebut the conclusions drawn by the probation officer. The PSR recommendation flows from trial testimony and from information provided by four co-conspirators. Irons contends this is an unreliable source and that, therefore, the increase was erroneous.

14

Irons asserts that the fact that the jury acquitted him of the two substantive charges weighs against his role as a manager or supervisor. While that is true, the district court's conclusion that Irons played the role of manager is not clearly erroneous based on all of the information properly before the court at sentencing.

Additionally, Irons objects to the fact that the District Court made no finding other than to adopt the conclusions reached by the Probation Officer. It is not necessary for the district court to do any more than that; a district court is free to simply adopt the PSR recommendation. *United States v. Singer*, 970 F.2d 1414, 1419 (5th Cir. 1992).

## i. Denial of minor participant reduction

Henton claims that the district court erred by refusing to decrease his offense level by two levels in accordance with Sentencing Guideline § 3B1.2(b), which allows for a decrease based upon a finding that the defendant was a minor participant. The district court's refusal to grant a decrease is reviewed for clear error. *United States v. Majia-Orosco*, 867 F.2d 216, 221 (5th Cir.), *cert. denied*, 492 U.S. 924 (1989). A decrease is not appropriate merely because the defendant's participation is "somewhat less" than the other participants in the crime. *United States v. Castillo*, 77 F.3d 1480, 1493-94 (5th Cir. 1996). Additionally, "when a sentence is based on an activity in which a

15

defendant was actually involved, U.S.S.G. § 3B1.2 does not require a reduction in the base offense level even though the defendant's activity in a larger conspiracy may have been minor or minimal. *United States v. Atanda*, 60 F.3d 196, 199 (5th Cir. 1995).

Henton was convicted of distribution of cocaine and his offense level was calculated based on the actual amount of cocaine he distributed, not on the reasonably foreseeable amount of cocaine distributed during his time in the conspiracy. Therefore, under *Atanda*, Henton was not entitled to a decrease in his offense level, and the district court was not clearly erroneous in his refusal.

### III. CONCLUSION

Based on the foregoing, the Appellants' convictions and sentences are affirmed.

AFFIRMED.